J. A29015/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: E.H., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.H., BIRTH MOTHER, | : | No. 966 WDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered May 12, 2015,
in the Court of Common Pleas of Allegheny County
Orphans' Court Division at No. CP-02-AP-000031-2015

| | | |
|---|---|---|
| IN RE: L.K., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.H., BIRTH MOTHER, | : | No. 967 WDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered May 12, 2015,
in the Court of Common Pleas of Allegheny County
Orphans' Court Division at No. CP-02-AP-000033-2015

| | | |
|---|---|---|
| IN RE: R.-J.K., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.H., BIRTH MOTHER, | : | No. 968 WDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered May 12, 2015,
in the Court of Common Pleas of Allegheny County
Orphans' Court Division at No. CP-02-AP-000032-2015

BEFORE: FORD ELLIOTT, P.J.E., BOWES AND MUSMANNO, JJ.

J. A29015/15

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED DECEMBER 30, 2015**

In these consolidated appeals, R.H. ("Mother") appeals from the orders in the Allegheny Court of Common Pleas that involuntarily terminated her parental rights to three children, E.H., a male, born in December of 2007; L.K., a female, born in October of 2011; and R.-J.K., a male, born in November of 2010 (collectively, "the Children"). Upon careful review, we affirm.[1]

We summarize the factual and procedural history as follows. The Allegheny County Office of Children, Youth and Families ("CYF") first became involved with this family as a result of allegations by Mother that R.K., the father of L.K. and R.-J.K., hit Mother's son, E.H., in the ear, causing it to bleed. (Trial court opinion, 7/10/15 at 4.) E.H. was adjudicated dependent on August 10, 2012, but he remained in Mother's physical custody.

The Children were placed in kinship care with their maternal grandmother by a shelter care order dated February 15, 2013, due to

---

[1] In separate orders, the orphans' court involuntarily terminated the parental rights of R.O.B., the natural father of E.H., and of any unknown father. R.O.B. did not file a notice of appeal, and he is not a party to Mother's appeals. Further, the orphans' court denied the petitions for the involuntary termination of the parental rights of R.K., the natural father of L.K. and R.-J.K. The guardian *ad litem* ("GAL") filed notices of appeal, the dispositions of which are by separate memorandum. The GAL has filed an appellee brief in the instant appeals, wherein it argues in support of the orders involuntarily terminating Mother's parental rights.

Mother's incarceration at the Allegheny County Jail.[2]  The shelter care order directed that the Children be returned to Mother's care upon her release from jail.  Mother was released on February 20, 2013, but she informed CYF that she was not able to resume care of the Children.  (Trial court opinion, 7/10/15 at 5.)  L.K. and R.J.-K. were adjudicated dependent on March 6, 2013.  At that time, CYF removed the Children from the home of their grandmother and placed them in kinship care with their maternal aunt, where they resided at the time of the subject proceedings.

CYF established the following Family Service Plan ("FSP") goals for Mother:  to maintain sobriety; stabilize mental health; eliminate verbal and physical abuse in the family; obtain and maintain appropriate housing; participate in a parenting program; maintain contact and cooperation with CYF; and maintain the financial demands of daily living.  (Notes of testimony, 4/10/15 at 16.)  In addition, CYF scheduled supervised visits, which Mother has been "relatively consistent" in attending.  (*Id.* at 25.)

On February 4, 2015, CYF filed petitions for the involuntary termination of the parental rights of Mother and the Children's respective fathers pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).  A

---

[2] Mother testified on cross-examination by counsel for CYF that she was incarcerated for "[a] speeding ticket that turned into a warrant." (Notes of testimony, 4/10/15 at 135.)  In addition, the record reveals a criminal history for Mother including being convicted of the crime of endangering the welfare of children following an incident in January of 2011, when she was driving with a suspended license while E.H. and R.-J.K. were in the car. Further, marijuana was found in the car. (*Id.* at 7-8.)

hearing on the petitions occurred on April 10, 2015, during which CYF presented the testimony of its caseworker, Sharon Martin, and Neil Rosenblum, Ph.D., who performed psychological evaluations. Mother testified on her own behalf. R.K., the father of L.K. and R.-J.K., testified on his own behalf, and he presented the testimony of David Richardson, the program director at the Center for Family Excellence.

By orders dated May 12, 2015, the orphans' court granted the petitions for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b). The orphans' court accompanied the subject orders with 19 findings of fact. On June 22, 2015, Mother filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this court consolidated **sua sponte**.[3] The orphans' court filed its Rule 1925(a) opinion on July 10, 2015.

On appeal, Mother presents the following issue for our review:

> 1. Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that

---

[3] A notice of appeal must be filed within 30 days after entry of the order from which the appeal is taken. **See** Pa.R.A.P. 903(a). Rule 108(b) provides that the date of entry of an order is "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)". Pa.R.A.P. 108(b). In this case, there is no date of entry on the certified docket of the subject orders. As such, the appeal period has not been triggered, and therefore, Mother's appeals are timely. **See In re L.M.**, 923 A.2d 505 (Pa.Super. 2007) (declining to quash appeal as untimely where the docket does not show that notice of entry of involuntary termination of parental rights order was given).

J. A29015/15

> CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the [C]hildren pursuant to 23 Pa.C.S.[A.] § 2511(b)?

Mother's brief at 9.

We consider Mother's issue mindful of our well-settled standard of review.

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 608 Pa. 9, 9 A.3d 1179, 1190 (2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; ***R.I.S.***, [614 Pa. 275, 284,] 36 A.3d [567,] 572 [(2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel Bassett v. Kia Motors America, Inc.***, [613 Pa. 371, 455,] 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, 575 Pa. 647, [654-655,] 838 A.2d 630, 634 (2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***
>
> As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding

- 5 -

the child and parents. ***R.J.T.***, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 539 Pa. 161, 650 A.2d 1064, 1066 (1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-827 (Pa. 2012).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

The relevant provisions of Section 2511 in this case are as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . . .

(2)     The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

(5)     The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . . .

(8)     The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date

of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).

Instantly, Mother does not raise an issue with respect to Section 2511(a). Rather, her sole issue on appeal relates to Section 2511(b). Mother argues that the testimony of Dr. Rosenblum and her own testimony demonstrates that a bond exists between her and the Children. Further, Mother argues that terminating her parental rights will not serve the Children's needs and welfare because it will end all visits between her and the Children. Further, with respect to L.K. and R.-J.K., Mother asserts that they are not eligible for adoption since their father's parental rights have not been terminated. As such, Mother argues there will be no possibility of continued visits in the form of post-adoption contact

between her and L.K. and R.-J.K. Upon careful review, we reject Mother's assertions.

With respect to Section 2511(b), this court has described the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010).

In considering the affection that a child may hold for his or her natural parents, this court has explained:

> [C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent. . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or

> when considered in connection with a child's feeling toward a parent, to establish a **de facto** beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and its mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa.Super. 2008) (internal citations and quotation marks omitted).

In this case, Dr. Rosenblum performed individual psychological evaluations of the Children and Mother. He testified on direct examination that E.H., age seven at the time of the subject proceedings, "maintains a strong relationship and an attachment to" Mother. (Notes of testimony, 4/10/15 at 59.) Dr. Rosenblum did not testify with respect to the existence of a bond between Mother and L.K. or R.-J.K., then ages three and four.

Dr. Rosenblum recommended on direct examination that "a goal of adoption is consistent with [the Children's] needs and welfare." (*Id.* at 76.) He continued:

> Q. And do you believe . . . if the parents' rights are terminated, that that would have a significant negative impact on the [C]hildren?
>
> A. I think it's going to have an impact on [E.H.]. I can't say significant negative impact. I think he looks forward to his visits with his mother. . . . At this time they are occurring once a week. And I would recommend if the [c]ourt does move toward a termination of parental rights that the [C]hildren do have some continued contact with parents that would be at least once a month for a few months, because . . . I don't see [R.-J.K.] or [L.K.] being affected, but I think [E.H.] is

- 10 -

> going to need some time to work through the separation.

*Id.* Dr. Rosenblum further clarified on cross-examination by Mother's counsel:

> Q. [] [S]hould mother's rights be terminated, you felt that there should still be some contact for at least a few months[?]
>
> A. Well, at least for a few months. I mean, to be perfectly honest, I . . . would like to see mother have ongoing contact, period. I mean, this is her family. . . .
>
> She has such strong parenting skills that I think it would be a shame if they can't work something out where she can continue to see her children. She loves them, and she's good with them. The fact that she can't take care of them is unfortunate, but I believe they will benefit from having a continued relationship with her. And I would recommend that that be explored.

*Id.* at 79-80.

Mother testified on direct examination:

> Q. What effect do you think it would have on these children if your visits ended?
>
> A. It would be astronomically detrimental for all of my children to not have that contact with . . . me . . . .

*Id.* at 130.

In its Rule 1925(a) opinion, the orphans' court found that a bond exists between Mother and the Children. (Trial court opinion, 7/10/15 at 12.) The court stated that it considered Dr. Rosenblum's recommendation

for continued visits between Mother and the Children. (*Id.*) In addition, the court considered Dr. Rosenblum's belief that Mother "has intuition with respect to parenting." (*Id.* at 11.) Nevertheless, the court found that Mother "has shown no desire to be consistent." (*Id.*) Further, the orphans' court found that "Mother was unable to parent, as she failed to comply with the goals established in the Family Service Plans." (*Id.*) Significantly, the court found that Mother has not remedied her addiction to illegal drugs, and that her housing has not been consistent. (*Id.*) The court concluded that "Mother's continued behavior alone has caused the [C]hildren to be out of her care[,]" and that the Children deserve stability and permanency.

Upon careful review, we discern no abuse of discretion by the orphans' court in concluding that, despite the Children's bond with Mother, terminating her parental rights will serve the developmental, physical, and emotional needs and welfare of the Children pursuant to Section 2511(b). *See In re Adoption of C.D.R.*, 111 A.3d 1212, 1220 (Pa.Super. 2015) (concluding that the mother's bond with her child was outweighed by the mother's "repeated failure to remedy her parental incapacity," and by her child's need for permanence and stability). Further, we reject Mother's argument regarding the impossibility of her having post-adoption contact with L.K. and R.-J.K. because their father's parental rights have not been terminated. Even if L.K. and R.-J.K. were available for adoption, consideration of post-adoption contact is speculative and not relevant to the

Section 2511(b) analysis.  In this case, the testimony of Dr. Rosenblum set forth above supports the termination of Mother's parental rights pursuant to Section 2511(b) with respect to L.K. and R.-J.K.  Accordingly, we affirm the orders involuntarily terminating Mother's parental rights.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/30/2015